**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CHRISTOPHER M. COOPER,**<br>**Administrator of the Estate of Deaunte**<br>**Bell-McGrew,**<br>c/o Friedman & Gilbert<br>55 Public Square, Suite 1055<br>Cleveland, Ohio 44113,<br><br>      Plaintiff,<br><br>-vs-<br><br>**CITY OF COLUMBUS, OHIO,**<br>**MATTHEW BAASE,**<br>**JOHN NAREWSKI,**<br>c/o Office of the Columbus City Attorney<br>77 North Front Street<br>Columbus, Ohio 43215,<br><br>      Defendants. | **CASE NO.**<br><br>**JUDGE**<br><br><br><br><br><br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Christopher M. Cooper, as administrator of the Estate of Deaunte Bell-McGrew, for his complaint against Defendants City of Columbus, Matthew Baase, and John Narewski alleges as follows:

### INTRODUCTION

1.     This is a civil rights and wrongful death action. On October 29, 2015, Columbus Division of Police Officers Matthew Baase and John Narewski shot and killed Deaunte Bell-McGrew (hereinafter, "Decedent", "Plaintiff" or "Deaunte").

2.     Deaunte was shot and killed on October 29, 2015 by Defendants Baase and Narewski while lawfully sitting in a parked vehicle in the Amberly Square Apartment Complex.

3.     Defendants Baase and Narewski shot Deaunte shot six times.

4. Deaunte died as a result of those gunshot wounds.

5. Defendants Baase and Narewski confronted Deaunte in the parking lot under the pretextual excuse of a "consensual encounter."

6. Defendants Baase and Narewski confronted Deaunte in a manner that violated his constitutional rights. They failed to follow well-established constitutional policing practices, conducted an illegal seizure, and used deadly force excessively and unreasonably, among numerous other violations of policy and law.

7. The Columbus Division of Police's chain of command endorsed these unconstitutional policing tactics that placed Deaunte and the public at unnecessary risk of death and/or injury from not only Defendants Baase and Narewski, but also from other members of the Columbus Division of Police who have a similar tendency to use force excessively, unreasonably, and discriminatorily.

8. The policies, practices, and customs of the City of Columbus and Columbus Division of Police were the moving force behind the constitutional violations suffered by Deaunte Bell and were the cause of his death.

9. Plaintiff brings this federal civil rights action to hold the City of Columbus, the Columbus Division of Police, and Defendants Baase and Narewski accountable for the tragic death of Deaunte Bell-McGrew and to end civil rights violations carried out by Columbus Division of Police Officers against members of the community.

## JURISDICTION AND VENUE

10. The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983 et seq; the Judicial Code, §§1331 and 1343(a); and the Constitution of the United States.

11. Supplemental jurisdiction over the related state law claims is invoked pursuant to 28 U.S.C. §1367.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiff's claim also occurred in this judicial district.

### THE PARTIES

13.     Plaintiff Christopher M. Cooper, Esq., is the Administrator of the Estate of Deaunte Bell-McGrew, appointed by the Franklin County Probate Court on May 5, 2017 in Case No. 582248, and was a resident of Franklin County, Ohio at all times material to the subject incident.

14.     Defendant City of Columbus, Ohio, is a political subdivision of the state of Ohio, organized and existing under the laws of the state of Ohio, and operating and conducting business in Franklin County, Ohio. Defendant City of Columbus is a "person" under 42 U.S.C. § 1983. The Columbus Division of Police is a subdivision of Defendant City of Columbus, Ohio. The City of Columbus, Ohio is the employer and principal of Defendants Baase and Narewski, and is responsible for the training, supervision, policies, practices, and customs of the Columbus Division of Police.

15.     Defendant Matthew Baase was, at all times relevant to the allegations made in this complaint, a duly appointed police officer for the Columbus Division of Police, employed by the City of Columbus acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

16.     Defendant John Narewski was, at all times relevant to the allegations made in this complaint, a duly appointed police officer for the Columbus Division of Police, employed by the City of Columbus acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

## FACTUAL ALLEGATIONS

### *The Shooting*

17.     On October 29, 2015, around 9pm, Deaunte Bell-McGrew was sitting in a legally parked vehicle in a parking lot in the Amberly Square Apartment Complex, just to the north of 2764 Brandy Drive, in the City of Columbus, County of Franklin, State of Ohio.

18.     Deaunte was sitting in the vehicle speaking with a friend and her boyfriend.

19.     Defendants Baase and Narewski, who were on duty as police officers for the Columbus Division of Police, approached the vehicle under the pretextual excuse of a "consensual encounter."

20.     Deante Bell-McGrew did not consent to this encounter with Defendants Baase and Narewski.

21.     Deaunte Bell-McGrew was an African-American man.

22.     Defendants Baase's and Narewski's decision to target the vehicle and the people inside it was racially-motivated, constitutes racial profiling, and selective enforcement of laws based on race.

23.     Defendant Narewski approached the person sitting on the front-driver's side of the vehicle and inquired about what the occupants of the vehicle were doing.

24.     Suddenly, for no apparent reason, Defendant Narewski opened the back-driver's side door, where Deaunte was sitting. Narewski ordered Deaunte out of the vehicle.

25.     Deaunte—while acting legally and within his constitutional rights—repeatedly asked Defendant Narewski why he was being ordered from the vehicle, what he did to warrant Narewski's sudden and aggressive conduct, and what law Narewski believed Deaunte had violated.

26.     Instead of answering Deaunte, Defendant Narewski replied, "I know exactly who the fuck you are," and physically grabbed Deaunte in an attempt to pull him from the vehicle.

27.     Deaunte had no active warrants and was not engaging in any conduct giving rise to reasonable suspicion or probable cause to invite a police interaction.

28.     Defendant Narewski did not have reasonable suspicion or probable cause when he approached the vehicle, opened the vehicle door, and grabbed Deaunte.

29.     Defendant Narewski continued his attempt to pull Deaunte toward the open door of the vehicle, ignoring Deaunte's requests to understand why he was being removed from the vehicle.

30.     As Narewski pulled Deaunte toward the open door of the vehicle, Defendant Baase was positioned on the passenger side of the vehicle.

31.     Defendant Baase, standing on the outside of the vehicle, where the passenger door remained closed, yelled, "Gun!"

32.     Defendant Baase then fired a shot into the vehicle.

33.     Defendant Narewski backed away from the vehicle and unholstered his firearm.

34.     Defendant Narewski then repeatedly shot at Deaunte, who was still sitting in the vehicle, hitting him at least five times.

35.     Deaunte never pointed or attempted to point a gun at Defendants Baase or Narewski before they shot him.

36.     Deaunte did not pose a threat to the safety of any Defendant or anyone else at the time Defendants shot him.

37.     Deaunte was later declared dead as a result of his gunshot wounds.

38.     After this shooting, witnesses state that Deaunte was left wounded, without medical attention, for 15 to 30 minutes.

39.     After this shooting, Defendants Baase and Narewski jointly agreed and/or conspired with one another to prepare false, misleading, and incomplete official reports and to give false, incomplete, and misleading versions of the events to their superiors and to the public.

40.     To cover up their misconduct, Defendant Officers falsely claimed that Deaunte posed a threat sufficient to justify the use of deadly force.

41.     Defendants acted negligently when they violated their duty to exercise due care for Deaunte.

42.     Defendants committed the acts alleged in this complaint in a reckless, willful and/or wanton manner while engaged in police functions.

43.     The totality of the facts surrounding the fatal shooting of Deaunte Bell-McGrew reveal that Defendants Baase's and Narewski's seizure of Deaunte: was motivated in significant part by his race; was part of a pattern and/or practice of targeting African-American people for seizures; and constitutes selective and racially-discriminatory enforcement.

44.     The actions of the Defendants were taken jointly, in concert, and with shared intent.

### The Critical Incident Response Team Investigation

45.     The Critical Incident Response Team (CIRT) investigates all shootings involving Columbus Division of Police Officers and other cases at the direction of the commander of the Crimes Against Persons Bureau.

46.     The CIRT consists of 12 detectives from various shifts in the homicide unit, as well as the shift supervisors and the lieutenant over the homicide section.

6

47.     The CIRT conducts the investigation into all police-involved shootings, forwarding the results of that investigation to the Franklin County Prosecutor's Office to be presented to a grand jury.

48.     After the grand jury proceeds with a no-bill, the investigative packet is forwarded to the Columbus Division of Police Firearms Review Board to determine if the shooting was within Columbus Division of Police (CDP) policy.

49.     The Columbus Division of Police Chief makes the final decision on whether a shooting is within CDP policy.

50.     The Columbus Division of Police has an Officer Support Team, made up of officers who have been involved in a "critical incident" in the past.

51.     These officers respond to the scene of a police-involved shooting and provide support and advice to the officers involved.

52.     The CIRT Team Leader also provides initial training for Officer Support Team members.

53.     The Officer Support Team is trained to "steer [officers involved in a shooting] away from talking about the incident."

54.     In that training, the CIRT Team Leader has instructed Officer Support Team members to tell the officer involved in a shooting to not make a statement.

55.     In addition to training the Officer Support Team, the CIRT Team Leader teaches a class on CIRT Team "best practices" at the academy that any officer can sign up to take.

56.     In this class, officers are taught that they do not have to give a statement to the CIRT Team following a police-involved shooting.

57.     The CIRT Team does not attempt to question an officer involved in a shooting immediately, instead establishing a policy of giving an officer at least seven to fourteen days before attempting to question them.

58.     After a police officer is involved in a shooting, the CIRT Team allows the officer to walk back through the scene.

59.     During the walk through, the CIRT Team has a standing agreement with the Fraternal Order of Police (FOP) that the CIRT Team will be allowed to ask three pre-determined questions of the officers with their FOP attorney present.

60.     In the CIRT Team's investigative packet, they include information about a victim's alleged criminal history, gang affiliation, and known associates, among other information.

61.     No background information related to prior uses of force is provided in the CIRT investigative packet regarding the officers involved in a shooting.

62.     The CIRT Team's investigative packet includes information about a victim's drug and alcohol use.

63.     No drug or alcohol tests are performed or requested by the Columbus Division of Police on an officer involved in a shooting.

64.     Immediately following the death of Deaunte Bell-McGrew, CDP officers conducting the CIRT investigation willfully, recklessly, and/or with deliberate indifference, influenced and/or mischaracterized several witness' statements, while overlooking or failing to search for other witnesses to the shooting of Deaunte Bell-McGrew.

*The City of Columbus and Columbus Division of Police*
*Are the Moving Force Behind the Fatal Shooting of Deaunte Bell-McGrew*

65.    The City of Columbus and Columbus Division of Police (CDP) engage in a troubling pattern of hiring, retaining, and failing to discipline officers who tend to use force excessively and discriminatorily. This pattern including the hiring, retention, and failure to discipline Defendants Baase and Narewski, and is directly related to the death of Deaunte Bell-McGrew:

(a) During his time as an officer with the Columbus Division of Police leading up to Deaunte's death, Defendant Baase had been the subject of at least 14 Internal Affairs Bureau investigations;

(b) During his time as an officer with the Columbus Division of Police leading up to Deaunte's death, Defendant Narewski had been the subject of at least 28 Internal Affairs Bureau investigations;

(c) Despite these repeated internal investigations, Defendants Baase and Narewski have rarely if ever been disciplined for their conduct: City of Columbus has often failed to sustain allegations against them or to discipline them through the chain of command.

66.    The failure to properly train, supervise, and discipline Defendants Baase and Narewski constitutes ratification and authorization of their conduct and reflects a pattern and practice of unconstitutional policing practices within the Columbus Division of Police.

67.    The City of Columbus and Columbus Division of Police failed to properly investigate the circumstances surrounding Deaunte's death, demonstrating the Division's ratification of their excessive use of force and a deliberate indifference to Deaunte's right to be free from excessive force. The Division's failure to investigate in Deaunte's case is part of a pattern and practice of failing to investigate and discipline officers for the excessive use of force against civilians.

68.    The City of Columbus, Ohio and the Columbus Division of Police acted with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and

constitutional and statutory rights of the Decedent, and maintained, enforced, tolerated, permitted, ratified, acquiesced in, and applied policies, practices, and/or customs of, among other things:

(a) Training and authorizing Columbus Division of Police Officers to act recklessly and aggressively with regard to the use of force against civilians;

(b) Hiring, retaining, and assigning officers with demonstrably unreasonable decision-making patterns and patterns of misconduct;

(c) Subjecting civilians to excessive and unreasonable use of force and unreasonable seizure;

(d) Allowing officers to violate the constitutional rights of civilians and take other unlawful action against civilians;

(e) Failing to adequately train officers regarding the use of force and the use of deadly force;

(f) Failing to adequately train officers on plainclothes tactics and negligently assigning officers to plainclothes duty;

(g) Failing to adequately supervise officers and permitting unlawful officer conduct;

(h) Failing to adequately discipline officers regarding their unlawful conduct;

(i) Failing to perform drug and alcohol tests on officers after their involvement in police shootings;

(j) Failing to adequately investigate police-involved shootings, and ratifying and authorizing future unconstitutional uses of force;

(k) Condoning and encouraging officers in the belief that they can violate the constitutional rights of people like Deaunte Bell-McGrew, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

69. The City of Columbus, Ohio and the Columbus Division of Police authorized, acquiesced in, ratified, tolerated, permitted, or maintained policies, practices, and customs permitting Columbus Division of Police Officers to engage in the unlawful and unconstitutional acts set forth in the foregoing paragraph.

70. Defendants' conduct alleged in this complaint constitutes a pattern of constitutional violations based on a deliberate plan by defendants and/or on defendants' deliberate indifference, gross negligence, and/or reckless disregard to safety, security, and rights of Deaunte Bell-McGrew and other civilians:

(a) Defendant City of Columbus and Columbus Division of Police have a policy, practice, and custom of allowing officers to violate the constitutional rights of civilians;

(b) Defendant City of Columbus and Columbus Division of Police have a policy, practice, and custom of failing to adequately train, supervise, and discipline officers who participate in such unlawful conduct;

(c) Defendant City of Columbus and Columbus Division of Police have a policy, practice, and custom of failing to implement constitutional CDP policies and/or implementing unconstitutional CDP policies governing the conduct of CDP officers;

(d) The Team Leader for the Critical Incident Response Team had both actual and constructive knowledge of the actions of Defendants Baase and Narewski, as well as actual and constructive knowledge of the conduct of detectives responsible for investigating police-involved shootings;

(e) The Team Leader for the Critical Incident Response Team, along with the CDP chain of command, authorized and encouraged the pattern and practice of failing to adequately investigate officer-involved shootings;

(f) The City of Columbus had actual and constructive knowledge of the conduct of Defendants Baase and Narewski, as well as actual and constructive knowledge of the conduct of the CDP chain of command in failing to train, supervise, and discipline Defendants Baase, Narewski and others like them;

(g) The City of Columbus actual and constructive knowledge of the actions of Defendants Baase and Narewski, as well as actual and constructive knowledge of the conduct of the CDP chain of command in implementing policies, practices, and customs allowing CDP officers to violate the constitutional rights of civilians;

(h) The City of Columbus had actual and constructive knowledge of the actions of Defendants Baase and Narewski, as well as actual and constructive knowledge of the conduct of the CDP chain of command in implementing policies, practices, and customs of failing to implement constitutional CDP policies and/or implementing unconstitutional CDP policies governing the conduct of CDP officers.

71.     Upon information and belief, the City of Columbus and CDP have a history and practice of selectively targeting African-Americans, and that the City was aware of this unlawful practice through numerous complaints made by African-American citizens.

72.     At the time of the events described in this complaint, Defendants' and CDP's pattern of racially discriminatory conduct was established through policy, practice, and custom of the City of Columbus and the Columbus Division of Police.

73.     The City of Columbus effectively sanctioned and endorsed Defendants' treatment of Deaunte Bell-McGrew by failing to take any disciplinary or corrective action, as part of a continuing pattern of unconstitutional policing by CDP officers.

*Damages*

74.     As a direct and proximate result of the Defendants' conduct as described in this complaint, Deaunte Bell-McGrew suffered from terror and pain inflicted upon him, including severe personal injuries and extreme emotional distress, during the course of this brutal attack and as he died. Deaunte sustained damages, including, *inter alia*, violations of his constitutional rights, pre-death pain and suffering, and post-death loss of enjoyment of his life.

75.     As a direct and proximate result of the Defendants' conduct as described in this complaint, Deaunte Bell-McGrew's next of kin and his community suffered and continue to suffer, *inter alia*, severe grief, injury, pain and suffering, emotional and mental distress, loss of love, comfort, affection, society, companionship, consortium, pecuniary loss, and expenses, as well as other injuries as a result of his death.

76.     The Estate of Deaunte Bell-McGrew has incurred, *inter alia*, medical, burial, and other related expenses.

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim – Unreasonable Seizure
### against Individual Defendants

77.     All of the foregoing paragraphs are incorporated as though fully set forth here.

78.     The actions of the Defendants Baase and Narewski, as alleged in the preceding paragraphs, violated Deaunte Bell-McGrew's rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizure, and his right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

79.     Deaunte Bell-McGrew was subjected to the use of excessive force in violation of his Fourth Amendment rights.

80.     Any reasonable officer knew or should have known that these rights at the time of the complained conduct as they were clearly established at that time.

81.     The actions of the Defendant Officers as alleged in this count of the complaint were the direct and proximate cause of the constitutional violations set forth above, along with injuries and damages to Deaunte Bell-McGrew and his heirs and next of kin.

82.     Defendants are jointly and severally liable for this conduct.

### SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim - Racial Discrimination in Violation of the Equal Protection Clause
### against Individual Defendants

83.     All of the foregoing paragraphs are incorporated as though fully set forth here.

84.     The actions of the Defendants Baase and Narewski, as alleged in the preceding paragraphs, violated Deaunte Bell-McGrew's rights under the Equal Protection Clause and the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

85.     Defendants Baase and Narewski selectively enforced the law when they seized Deaunte Bell-McGrew based on his race.

86.     Deaunte Bell-McGrew's race was a motivating factor in the decision to detain him, seize him, and subject him to the use of excessive force and deadly force.

87.     Defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose.

88.     Deaunte Bell-McGrew was an African-American person, was a member of a protected class, and had the clearly-established statutory right to be free from racially-motivated detentions, arrests, searches, and seizures.

89.     Any reasonable officer knew or should have known that these rights at the time of the complained conduct as they were clearly established at that time.

90.     Defendants' conduct was undertaken with the purpose of depriving Deaunte Bell-McGrew of the equal protection and benefits of the law, equal privileges and immunities under the law, and due process in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

91.     The actions of the Defendant Officers as alleged in this count of the complaint were the direct and proximate cause of the constitutional violations set forth above, along with injuries and damages to Deaunte Bell-McGrew and his heirs and next of kin.

92.     Defendants are jointly and severally liable for this conduct.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 *Monell* Claim against Defendant City of Columbus

93.     All of the foregoing paragraphs are incorporated as though fully set forth here.

94.     At all times material hereto, Defendants were employees and/or agents of Defendant City of Columbus, acting within the course and scope of their employment, and in

furtherance of the interest of Defendant City of Columbus, and with Defendant City of Columbus' consent.

95.     The actions of the individual Defendant Officers, as alleged above, were taken pursuant to one or more interrelated de facto policies (even if not official written edicts), practices and/or customs of civil rights violations and unconstitutional practices of the City of Columbus and the Columbus Division of Police.

96.     The City of Columbus, at all times relevant herein, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently is directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

97.     Despite the facts and circumstances surrounding this shooting which clearly demonstrate that the actions of the Defendant Officers were unreasonable and unlawful, upon information and belief, the City of Columbus failed to effectively investigate or impose any discipline on the Defendant Officers for their illegal behavior.

98.     At all times relevant, Defendant City of Columbus and the Columbus Division of Police had interrelated de facto policies, practices, and customs which included, inter alia:

 (a) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control their police officers who engage in unjustified use of excessive and unreasonable force;

 (b) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control their police officers who engage in racially-motivated and/or racially-discriminatory policing;

 (c) the failure to properly investigate the use of excessive and unreasonable force against civilians;

 (d) the failure to properly investigate racially-motivated and/or racially-discriminatory policing;

(e) the failure to properly discipline, supervise, monitor, counsel and otherwise control police officers who engage in unjustified use of excessive and unreasonable force;

(f) the failure to properly discipline, supervise, monitor, counsel and otherwise control police officers who engage in racially-motived and/or racially-discriminatory policing;

(g) the failure to properly train and supervise police officers to operate within the bounds of the constitution, particularly in regard to seizures, use of deadly force, and racially-discriminatory policing;

(h) the police code of silence.

99. The aforementioned de facto policies, practices, and customs of the Columbus Division of Police include acts of excessive use of force, racially-discriminatory policing, and other willful, wanton, and/or reckless behavior leading to harmful consequences to citizens.

100. The Columbus Division of Police has engaged in little or no meaningful investigation or disciplinary action in response to the misconduct of their officers, thereby creating a culture or climate where members of the police department can escape their acts of misconduct with impunity.

101. The City of Columbus was the moving force behind the conduct of the Defendant Officers in shooting and killing Deaunte Bell-McGrew.

102. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including unlawful searches, seizures, and prosecutions, despite their obligation under police regulations to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they or their fellow officers have engaged in misconduct.

103. The de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence are interrelated and exacerbate the effects of each other, to institutionalize police lying and immunize police officers from discipline.

104. That the unconstitutional actions of the Defendants as alleged in this complaint were part and parcel of a widespread municipal policy, practice, and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policymakers, as well as by a wide range of other police officials, officers, and divisions or units of the Columbus Division of Police.

105. The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injuries to Deaunte Bell-McGrew and his heirs and next of kin because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

106. But for the belief that they would be protected – both by fellow officers and by the Columbus Division of Police – from serious consequences, the Defendant Officers would not have engaged in the conduct that resulted in the injuries to Deaunte Bell-McGrew and his heirs and next of kin.

107. Defendant City of Columbus has a policy, practice and custom of conspiring to interfere with and to deprive Plaintiffs of their causes of action by allowing suspect officers unreasonable and harmful concessions during investigations of police-involved shootings.

108. The policies, practices and customs described above have been the subject of civil rights investigations, previous lawsuits and have been well known within the Columbus

community for many years. These policies, practices and customs have been perpetuated by line officers including Defendants Baase and Narewski, and policymakers and those responsible for hiring, training and supervision of police officers within the City of Columbus who have all acted negligently, recklessly, intentionally, knowingly and with deliberate indifference to the serious safety needs of the people of Columbus, including Deaunte Bell-McGrew.

109.    The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendant Officers to commit the acts alleged in this complaint against Deaunte Bell-McGrew.

110.    The City of Columbus therefore acted as the moving force behind and the direct and proximate causes of the violations of Deaunte Bell-McGrew's constitutional rights and all injuries and damages suffered by him and his heirs and next of kin.

### FOURTH CLAIM FOR RELIEF
### State Law Claim for Wrongful Death
### Pursuant to Ohio R.C. § 2125

111.    All of the foregoing paragraphs are incorporated as though fully set forth here.

112.    Deaunte Bell-McGrew is survived by his heirs and next of kin. They have suffered and will continue to suffer, *inter alia*, pecuniary loss, loss of his aide, comfort, consortium, society, companionship, guidance, advise, counsel, assistance, attention, and protection, as well the grief and sorrow from the loss of the love and affection of and for their loved one, and otherwise suffered damages to their detriment.

113.    Deaunte Bell-McGrew's heirs and next of kin have suffered mental anguish caused by his death, as well as mental anguish as a result of the circumstances surrounding his death.

114.    Reasonable funeral and burial expenses have been incurred.

18

115.    The Defendant officers otherwise acted negligently, intentionally, willfully, wantonly, and/or recklessly in committing the acts alleged in this complaint, which resulted in the injuries and wrongful death of Deaunte Bell-McGrew and damages suffered by his Estate.

116.    As a direct and proximate result of the actions of the Defendants in this complaint, Deaunte Bell-McGrew died, subjecting the Defendants to liability pursuant to Ohio Revised Coe3 §§ 2125.01-03.

## FIFTH CLAIM FOR RELIEF
### State Law Claim for Survivorship

117.    All of the foregoing paragraphs are incorporated as though fully set forth here.

118.    Plaintiff further claims that as a direct and proximate result of the willful, wanton, reckless, and unconstitutional conduct of the Defendants as alleged herein, individually and/or jointly, and/or by and through their agents and/or employees, Deaunte Bell-McGrew was caused to suffer mental anguish and conscious physical pain and suffering prior to his death, for which compensation is sought.

119.    Defendants owed Deaunte Bell-McGrew a duty of care, they breached that duty, and their breach of duty was the proximate cause of Deaunte Bell-McGrew's death.

120.    The Plaintiff brings this survivor action pursuant to Ohio Revised Code § 2305.21.

## PRAYER FOR RELIEF

Plaintiff demands that judgment be entered in his favor on all counts and prays the Court to award the following relief:

   a.    An award of actual and/or compensatory damages against all Defendants in an amount to be determined at trial that will fully and fairly compensate the Estate of Deaunte Bell-McGrew for the injuries and damages he and his next of kin suffered;

b.      An award of punitive damages against Defendants Baase and Narewski in an amount to be determined at trial that will serve to adequately punish and deter the acts and omissions alleged in this complaint;

c.      An award of attorneys' fees and the costs of this action pursuant to 42 U.S.C. Section 1988;

d.      Pre-judgment interest; and

e.      All such other relief to which Plaintiff is entitled and/or this Court deems equitable.

**TRIAL BY JURY ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED.**

Dated: July 17, 2019

*/s/ Jacqueline Greene*
Jacqueline Greene (0092733)
Sarah Gelsomino (0084340)
Terry H. Gilbert (0021948)
FRIEDMAN & GILBERT
55 Public Square, Suite 1055
Cleveland, OH 44113-1901
T: 216-241-1430
F: 216-621-0427
jgreene@f-glaw.com
sgelsomino@f-glaw.com
tgilbert@f-glaw.com

*Counsel for Plaintiff*